UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARY HOFFERBER,

    Plaintiff,

v.

                                      Case No. 03-74161
                                      Hon. Gerald E. Rosen

CIGNA LIFE INSURANCE COMPANY
and LIFE INSURANCE COMPANY OF
NORTH AMERICA,

    Defendants.
_____/

**FINDINGS OF FACT AND CONCLUSIONS OF LAW
REGARDING CROSS-MOTIONS TO REVERSE OR AFFIRM
ADMINISTRATOR'S DENIAL OF LONG TERM DISABILITY BENEFITS**

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on    March 31, 2006

PRESENT:  Honorable Gerald E. Rosen
                   United States District Judge

## I. INTRODUCTION

In the present suit, Plaintiff Mary Hofferber challenges the decision of the Defendant insurer, Life Insurance Company of North America ("LINA"), to deny her claim for long term disability benefits under a plan offered by her employer, ABM Industries, Inc.[1]  This Court's subject matter jurisdiction over this case rests upon

---

[1]Although CIGNA Life Insurance Company also has been named as a defendant, Defendant LINA states without contradiction that this other party had no involvement in the

1

Plaintiff's claim for benefits under an employee welfare benefit plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*

Presently before the Court are the parties' cross-motions to affirm or reverse Defendant's decision to deny long term disability benefits to Plaintiff. These motions have been fully briefed on both sides and are ripe for decision. Upon reviewing the parties' submissions, the pleadings, and the administrative record, the Court finds that the relevant allegations, facts, and legal arguments are adequately presented in these materials, and that oral argument would not significantly aid the decisional process. Accordingly, the Court will decide the parties' cross-motions "on the briefs," see Local Rule 7.1(e)(2), U.S. District Court, Eastern District of Michigan, following the guidelines set forth by the Sixth Circuit in Wilkins v. Baptist Healthcare System, Inc., 150 F.3d 609, 619 (6th Cir. 1998).[2]

This opinion and order sets forth the Court's findings of fact and conclusions of law. To the extent that any findings of fact constitute conclusions of law, they are adopted as such. To the extent that any conclusions of law constitute findings of fact, they are so adopted. For the reasons set forth below, the Court readily concludes that the

---

events or decisions at issue in this case. Accordingly, the Court refers to LINA as the sole defendant throughout the balance of this opinion.

[2]Specifically, Wilkins holds that neither summary judgment nor a bench trial provides an appropriate procedural basis for resolving ERISA actions to recover benefits. Rather, the Sixth Circuit suggested that district courts generally should review challenged benefit denials "based solely upon the administrative record, and [should] render findings of fact and conclusions of law accordingly." 150 F.3d at 619.

challenged administrative decision should be affirmed.

## II. **FINDINGS OF FACT**

The operative facts of this case are straightforward. Indeed, these facts remain largely unchanged from the time this Court decided Hofferber v. Cigna Life Insurance Co., No. 01-70462 (E.D. Mich. Feb. 28, 2002), a case in which the same Plaintiff, Mary Hofferber, challenged a decision by the same Defendant, Life Insurance Company of North America ("LINA"), to deny her claim for short term disability benefits arising out of the same underlying incident.

At all relevant times, Plaintiff was an employee of ABM Industries, Inc. On December 14, 1999, she sustained injuries in a slip-and-fall accident at a restaurant. As discussed in the Court's prior ruling, Plaintiff filed a claim for short term disability benefits under a plan offered by her employer and administered by LINA. LINA denied this claim on the ground that Plaintiff was not a full-time employee of ABM Industries, as required to obtain benefits under the terms of the short term disability plan. Plaintiff sought judicial review of this decision, and this Court affirmed the denial of benefits, explaining that the administrative record lacked any evidence to suggest that LINA had acted arbitrarily or capriciously in determining that Plaintiff was ineligible for benefits as a less-than-full-time employee.

Following this unfavorable decision, Plaintiff filed a claim for long term disability benefits in August of 2002. Under the relevant provision of the long term disability policy (the "Plan") issued by Defendant LINA to Plaintiff's employer, ABM Industries,

eligibility for benefits is confined to "[a]ll active, regular, permanent, Full-time Employees of the Employer, excluding operating engineers of ABM Engineering Services, who work a minimum of 30 hours per week." (Plan at 5, Admin. Record at 33.)[3]

Not surprisingly, given its decision denying Plaintiff's claim for short term disability benefits, LINA informed Plaintiff on August 14, 2002 that her claim for long term disability benefits had been denied:

> According to the ABM Industries Policy, in order to be eligible for disability benefits, you must be in a class of eligible employees. The Policy definition of classes of eligible employees [is] defined as follows:
>
> > "Class 1: All other active, regular, Full-time employees of the employer, excluding operating engineers of ABM Industries Services, who work a minimum of 30 hours per week."
>
> On 08/08/02, we were informed by Carmen Aruta, with ABM Industries, that you were not a full-time employee. As a result, we have concluded you do not satisfy the policy definitions of Class of eligible employees noted in the above paragraphs. Therefore, you are not eligible for Long Term Disability benefits under the above referenced Policy.

(8/14/2002 Letter, Admin. Record at 8.) This letter further informed Plaintiff of her right to pursue an administrative appeal, and invited her, in support of such an appeal, to "include any documentation, which you feel supports your claim (i.e., proof that you were considered a Full-time employee as defined by the aforementioned policy)." (Id.)

---

[3]In contrast, the analogous eligibility provision of the short term disability plan at issue in the prior case required that an employee be "in Active Service for the Employer and regularly scheduled to work thirty or more hours per week." (Defendant's Motion, Ex. B, Short Term Disability Admin. Record at 119.)

Although Plaintiff did not seek further administrative review when LINA denied her prior claim for short term disability benefits, Plaintiff elected to pursue this avenue in this instance, notifying Defendant in a December 4, 2002 letter that she was requesting an appeal. Despite LINA's invitation to provide documentary proof of her eligibility for benefits, Plaintiff declined to do so, explaining that she had "completely fulfilled" the requirement of full-time employment and had "proven it with the hours per week I have worked (some instances, more than 40 . . . ), verifiable by my W-2 and payroll records." (12/4/2002 Letter, Admin. Record at 4-5.) She further cited the "fact that I earned vacation pay from Day 1, I turned down health insurance benefits . . . , and I was offered 401k benefits," and she asserted that only full-time employees were offered these benefits. (Id., Admin. Record at 5.) Plaintiff then stated:

> In conclusion, . . . I have submitted all records requested by your company during the [short term disability claim] process. I have submitted payroll records, doctors' records, W-2's, and all of this at much expense to me. I will be more than glad to resubmit these things again, however, ABM Industries does bear some, if not a greater responsibility to their employees . . . in keeping fair and accurate records.

(Id.)

On December 26, 2002, Defendant acknowledged receipt of Plaintiff's request for an administrative appeal, but affirmed its initial decision, explaining that "[b]ased on the information provided by your employer you do not satisfy the policy definition of eligible class of employee." (12/26/2002 Letter, Admin. Record at 1.) Plaintiff then commenced this action in Wayne County Circuit Court, and Defendant removed the case to this Court

5

as completely preempted, in light of Plaintiff's request for an award of benefits under a employee disability plan governed by ERISA.

### III. CONCLUSIONS OF LAW

**A.     The Standards Governing the Parties' Cross-Motions**

A participant or beneficiary of an ERISA qualified plan may bring suit in federal district court to recover benefits due under the terms of the plan. 29 U.S.C. § 1132(a)(1)(B). Courts review *de novo* a denial of benefits challenged under this provision, unless the benefit plan confers upon the administrator the discretionary authority to determine eligibility for benefits or to construe the terms of the plan, in which case a more deferential "arbitrary and capricious" standard applies. See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S. Ct. 948, 956-57 (1989); Yeager v. Reliance Standard Life Ins. Co., 88 F.3d 376, 380 (6th Cir. 1996). This more deferential standard applies here, in light of the Plan provision requiring that a claimant "must provide to [LINA], at his or her own expense, satisfactory proof of Disability before benefits will be paid," (Plan at 11, Admin. Record at 39). See Perez v. Aetna Life Ins. Co., 150 F.3d 550, 556-58 (6th Cir. 1998) (holding that a comparable requirement of "satisfactory evidence" triggered arbitrary and capricious review); Yeager, 88 F.3d at 380-81 (reaching the same conclusion in light of a plan requirement of "satisfactory proof").

The arbitrary and capricious standard is the "least demanding form of judicial review," under which this Court must uphold a denial of benefits if it is "rational in light

of the plan's provisions." Monks v. Keystone Powdered Metal Co., 78 F. Supp.2d 647, 657 (E.D. Mich. 2000) (internal quotation marks and citations omitted), aff'd, 2001 WL 493367 (6th Cir. May 3, 2001). "When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." Davis v. Kentucky Finance Cos. Retirement Plan, 887 F.2d 689, 693 (6th Cir. 1989) (internal quotations and citations omitted), cert. denied, 495 U.S. 905 (1990). "Before concluding that a decision was arbitrary and capricious, a court must be confident that the decisionmaker overlooked something important or seriously erred in appreciating the significance of evidence." Marchetti v. Sun Life Assurance Co., 30 F. Supp.2d 1001, 1008 (M.D. Tenn. 1998). For the reasons discussed below, the decision at issue here readily survives scrutiny under this standard.

**B.     Defendant's Denial of Long Term Disability Benefits Was Not Arbitrary and Capricious, in Light of the Lack of Evidence that Plaintiff Met the Plan's Eligibility Requirements.**

With the above standards in mind, the Court now turns to the benefit denial at issue here. In seeking the reversal of this decision, Plaintiff contends that her bare assertions of eligibility for long term disability benefits were sufficient to trigger an obligation for LINA to seek records or other confirmation from ABM Industries regarding Plaintiff's employment status, rather than simply relying on the company's representations that Plaintiff was not a full-time employee. Plaintiff further contends that such an inquiry, if undertaken by Defendant, would have revealed that her employer's representations were untrue, and that she was, in fact, eligible for benefits. Plaintiff has

failed, however, to identify any legal authority for her novel theory of proper claim processing procedure.

As the starting point of her effort to impose upon Defendant the burden to ***disprove*** her eligibility for long term disability benefits, Plaintiff observes that her very act of applying for these benefits carried with it the implicit assertion that she did, in fact, meet the Plan's eligibility requirements. Plaintiff then made this assertion explicit in her December 4, 2002 written request for an appeal, in which she stated that she had "completely fulfilled" the requirement of full-time employment, and indicated that this asserted fact was "verifiable by my W-2 and payroll records" and was inferable from her eligibility for other sorts of employee benefits. (Admin. Record at 4-5.) Faced with these affirmative declarations of eligibility, on one hand, and the employer's bare assertion of lack of full-time status, on the other, Defendant should have, in Plaintiff's view, gathered the necessary records to conduct an independent inquiry into this matter.

Needless to say, Plaintiff's proposed approach would make claims processing a good deal more difficult. Any application for benefits, after all, carries with it the claimant's implicit assertion that he or she is, in fact, eligible for benefits, and meets all of the criteria necessary for such an award. Surely, however, the mere submission of a claim form, without more, does not trigger a claims administrator's obligation to identify and gather any evidence that might support this claim. Rather, the claims administrator is entitled to insist that the claimant make a threshold showing, at least, that he or she has satisfied each of the plan's prerequisites for the payment of benefits. Judicial review of

such a determination, after all, focuses on whether the claims administrator has "offer[ed] a reasoned explanation, based on the evidence," for its decision, Davis, 887 F.2d at 693, and not on whether it could have, through additional efforts, uncovered evidentiary support for a different outcome.

Even in the more limited context of "threshold" requirements such as eligibility for plan benefits, Plaintiff's burden-shifting approach runs counter to the ordinary understanding that an applicant will provide the information needed to process his or her claim. Indeed, this understanding is expressly embodied in the Plan in this case, which provides that a claimant's "[f]ailure . . . to cooperate . . . in the administration of the claim may result in termination of the claim, and that "[s]uch cooperation includes, but is not limited to, providing any information or documents needed to determine whether benefits are payable or the actual benefit amount due." (Plan at 17, Admin. Record at 45.) To be sure, the Plan also mandates the *employer's* cooperation "in the review of claims and applications for coverage," (id.), but this merely reflects the reality that the claims administrator generally has *none* of the information needed to process a claim, and thus must rely on the employee and the employer alike to supply this information.

This is precisely the course of action followed by Defendant here. Faced with Plaintiff's contention that she was an eligible full-time employee and her employer's assertion that she was not, Defendant reasonably turned to Plaintiff and asked her to provide documentary support for her claim. While Defendant perhaps could have asked the *employer* for records pertaining to the issue of Plaintiff's full-time status, whether in

9

addition to or in lieu of such a request to Plaintiff, the Court is not aware of any Plan language or other authority that would *require* Defendant to do so.

More importantly, when Defendant requested this information from Plaintiff, she did *not* respond that she was unable to provide it, or that such information was more appropriately sought from her employer. To the contrary, Plaintiff affirmatively declared that she already had "submitted all records requested by your company" in connection with her prior application for short term disability benefits, including "payroll records, doctors' records, [and] W-2's." (12/4/2002 Letter, Admin. Record at 5.)[4] Nothing in this letter, then, invited Defendant to pursue further evidence regarding Plaintiff's full-time employment status — quite the opposite, Plaintiff affirmed that all such evidence had been submitted in connection with her short term disability claim.

Having thus been assured by Plaintiff that she already had provided all of the information needed to establish her eligibility for long term disability benefits, Defendant quite reasonably proceeded to resolve this issue under the record provided for its consideration and review. As Defendant points out in its motion, this record is entirely bereft of any evidence that would cast doubt on Defendant's conclusion that Plaintiff had failed to establish her eligibility as an "[a]ctive, regular, permanent, Full-time Employee[] . . . who work[ed] a minimum of 30 hours per week." (Plan at 5, Admin. Record at 33.)

---

[4]In light of this assertion, the Court need not address the hypothetical situation in which only an employer, and not an employee, is able to provide the information needed by a claims administrator to complete the processing of a claim. Indeed, as discussed below, there is no doubt that Plaintiff was able to obtain the pertinent records here, as she actually did so, and has submitted them as an exhibit to her motion in this case.

Even accepting Plaintiff's invitation to survey the administrative record compiled in connection with her earlier claim for short term disability benefits, the Court once again agrees with Defendant that nothing in this record would warrant the reversal of the challenged decision, whether upon "arbitrary and capricious" review or under a less deferential standard.[5]

To the limited extent that Plaintiff addresses this issue on its merits, she advances only two challenges to Defendant's eligibility determination. First, she points to evidence which, in her view, reflects her employer's affirmative response when asked, at some point in the claim review process, whether Plaintiff was a full-time employee. This contention is utterly without merit, however, for two reasons. First, while Plaintiff and her counsel misleadingly suggest otherwise in their submission to the Court, the document cited in support of this argument actually was part of the administrative record compiled in connection with Plaintiff's *prior* claim for short term disability benefits, and not her *present* claim for long term disability benefits. (See Defendant's Motion, Ex. B, Short Term Disability Admin. Record at 87.)[6] Plaintiff has not explained why a statement purportedly made by her employer in connection with her earlier claim for benefits should

---

[5] The Court's ruling on this point should come as no surprise, as it reached precisely the same conclusion in the earlier case brought by Plaintiff, holding that Defendant had not acted arbitrarily or capriciously in determining that Plaintiff was ineligible for short term disability benefits. To the extent that it is even appropriate to revisit this issue — a matter discussed below — the Court finds no basis to deviate from its prior ruling on this very question.

[6] Indeed, the present administrative record is only 52 pages in length, a strong indication that Plaintiff's citations to pages 86-87 must refer to some *other* record.

somehow estop Defendant from denying her current claim — indeed, as indicated below, such a rule of estoppel is unlikely to be of benefit to Plaintiff, where her prior claim was denied on eligibility grounds and this decision was affirmed by this Court. Next, and equally importantly, this Court already addressed, and *rejected*, this very same contention in its prior decision, observing that the cited portion of the record appeared to reflect information reported to Defendant by *Plaintiff,* and not her employer. See Hofferber, No. 01-70462, slip op. at 6-7.

Finally, Plaintiff invites the Court to review a copy of her employment records, which have been attached as an exhibit to her present motion. Yet, Defendant correctly points out that this Court's review generally is "confin[ed] . . . to the evidence contained in the administrative record." Wilkins, 150 F.3d at 618. Wilkins explains that the "only exception . . . arises when consideration of that evidence is necessary to resolve an ERISA claimant's procedural challenge to the administrator's decision, such as an alleged lack of due process afforded by the administrator or alleged bias on its part." 150 F.3d at 618 (citation omitted). It is clear, at a minimum, that Plaintiff's complaint is devoid of allegations in support of any such procedural challenge. In addition, Plaintiff did not file a motion seeking leave to pursue discovery in support of such a procedural challenge, as required under the express terms of the Court's scheduling order.[7]

---

[7] Defendant also points out that this specific topic arose at the scheduling conference in this case, with Plaintiff's counsel indicating that he might wish to supplement the record and the Court advising him to file a motion seeking this relief. Again, no such motion was forthcoming.

At the eleventh hour, however, Plaintiff contends that she *has* raised a procedural challenge to Defendant's decision, advancing this argument for the first time in her response to Defendant's motion. Yet, the "procedural" irregularity cited by Plaintiff is nothing more than her claim, discussed above, that Defendant had an obligation to gather evidence to resolve the conflicting assertions of Plaintiff and her employer regarding her full-time employment status. As explained, there is no authority for this proposition. Thus, Plaintiff has failed to identify a procedural defect in the administrative proceedings that would permit this Court to look beyond the administrative record in resolving the parties' motions.

Indeed, this case would be a particularly poor candidate for such a procedural challenge. As noted, Defendant affirmatively invited Plaintiff to submit documentation in support of her claim of full-time employment status, but she expressly declined to do so, opining that it was unnecessary because she purportedly had already provided the information needed to resolve this issue in her favor. What is more, the records that Plaintiff now seeks to submit to the Court clearly were available – and, indeed, were evidently in Plaintiff's possession – while the administrative proceedings were still pending.[8] More generally, the Court sees no reason why Plaintiff would have been at the

---

[8]These records evidently were obtained from Plaintiff's employer through a subpoena issued by National Coney Island, the defendant in a separate civil suit brought by Plaintiff arising from the same December 14, 1999 slip-and-fall incident that triggered her claims for short term and long term disability benefits. As indicated in an accompanying cover sheet, the parties to this civil suit, including Plaintiff, received copies of these records on December 13, 2002, and Plaintiff's employer provided these records on November 20, 2002.

mercy of her employer to produce documentation reflecting her employment status — most employees themselves presumably have pay stubs and other employment records that would disclose such information. Any shortcomings in the administrative record, then, cannot be attributed to irregularities in the administrative proceedings, but instead are the fault of Plaintiff and her counsel.

**C.      Plaintiff's Claim of Eligibility Is Defeated by the Doctrine of Issue Preclusion, in Light of the Court's Ruling to the Contrary in the Prior Action Under Materially Indistinguishable Plan Language and Essentially the Same Administrative Record.**

Apart from arguing that its decision should be affirmed on the merits, Defendant contends in the alternative that this decision should be spared from further judicial scrutiny under the doctrine of issue preclusion. In support of this argument, Defendant notes that the prior suit brought by Plaintiff involved precisely the same question at issue here — namely, whether Plaintiff was eligible for disability benefits as a full-time employee. The Court having decided this issue in Defendant's favor and against Plaintiff in the prior suit, Defendant contends that the issue cannot be revisited here. Under the particular circumstances presented in this case, the Court agrees.

As stated by the Sixth Circuit, the doctrine of issue preclusion applies "when (1) the issue in the subsequent litigation is identical to that resolved in the earlier litigation, (2) the issue was actually litigated and decided in the prior action, (3) the resolution of the

---

Notably, both of these dates are ***before*** Defendant denied Plaintiff's administrative appeal on December 26, 2002. And, of course, Plaintiff has not explained why it would have been necessary to rely on a third party, National Coney Island, to obtain records from her employer.

issue was necessary and essential to a judgment on the merits in the prior litigation, (4) the party to be estopped was a party to the prior litigation (or in privity with such a party), and (5) the party to be estopped had a full and fair opportunity to litigate the issue." Hammer v. I.N.S., 195 F.3d 836, 840 (6th Cir. 1999). The fourth prong of this test is readily satisfied here, in light of the complete identity of the parties in this and the prior action.

The first three prongs of this test also are satisfied. In both this and the prior suit, Defendant denied Plaintiff's claim for benefits on the ground that she was not an eligible full-time employee.[9] In both cases, Plaintiff has challenged these claim denials on the ground that she was, in fact, eligible for benefits as a full-time employee, and that Defendant acted arbitrarily and capriciously in concluding otherwise. Moreover, the eligibility inquiries in the two cases turn upon Plaintiff's employment status at the very same point in time — specifically, December 14, 1999, the date of the slip-and-fall accident that gave rise to both of Plaintiff's claims for benefits. Finally, this issue of eligibility was affirmatively litigated and contested in the prior suit, was actually decided

---

[9]As Defendant acknowledges, the eligibility language in the short term and long term disability plans is not identical. Under the former, an employee was required to be "in Active Service for the Employer and regularly scheduled to work thirty or more hours per week." (Defendant's Motion, Ex. B, Short Term Disability Admin. Record at 119.) Under the long term disability plan, in contrast, benefits are available to "[a]ll active, regular, permanent, Full-time Employees of the Employer . . . who work a minimum of 30 hours per week." (Admin. Record at 33.) While these eligibility provisions are not precisely the same, Defendant correctly observes that an employee who fails to meet the less stringent eligibility requirements of the shot term disability plan cannot possibly meet the *additional* requirements imposed under the long term disability plan.

by the Court in Defendant's favor, and was the sole and dispositive basis for the Court's decision to affirm Defendant's administrative determination.

As to the fifth and final prong of the test for issue preclusion, there is no doubt that Plaintiff had a full and fair opportunity to litigate the issue of her eligibility for short term disability benefits, both during the course of the prior administrative proceedings and in the previous proceedings before this Court. Although Plaintiff elected not to pursue an administrative appeal from the denial of her claim for short term disability benefits — despite being advised of her right to do so — she sought review in this Court and submitted a brief explaining why, in her view, Defendant had erred in its eligibility determination. The Court fully and carefully reviewed and considered this submission and the administrative record before ruling to affirm Defendant's decision. Thus, Plaintiff had the opportunity to litigate the issue of her eligibility, and she affirmatively did so. It follows that all of the prerequisites to issue preclusion are satisfied, and that Plaintiff cannot now challenge the issue of eligibility that was decided against her in the prior suit.

The Court emphasizes the narrow and fact-specific nature of this ruling. Presumably, in most cases where a claims administrator denies two different claims for benefits by the same employee under two plans featuring similar language, it is likely that the administrative records compiled in deciding the two claims would differ in at least some respects. Under those circumstances, judicial review of the two claim denials would not involve precisely the same issue, because distinctions in the two administrative

records might conceivably warrant different outcomes, even under the deferential "arbitrary and capricious" standard.

      This, however, is the (presumably) rare case where ***both*** the pertinent plan language ***and*** the administrative record are the same — or, at least, materially indistinguishable. Moreover, this was no mere coincidence — Plaintiff expressly stated her intention to rely upon the administrative record compiled in connection with her short term disability claim as support for her claim for long term disability benefits. Under these circumstances, this Court undoubtedly would elect to adhere to its ruling in the earlier case, even if it were not bound to do so under preclusion principles. Having previously decided under the same record that Defendant's eligibility determination was not arbitrary and capricious, the Court readily reaches the same result here.

## IV.  CONCLUSION

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Plaintiff's Motion to Reverse Administrator's Ruling is DENIED.  IT IS FURTHER ORDERED that Defendants' Motion to Affirm Administrator's Decision is GRANTED.  In light of these rulings, Defendants' motion to strike is DENIED AS MOOT.


                                              s/Gerald E. Rosen
                                              Gerald E. Rosen
                                              United States District Judge

Dated:  March 31, 2006

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 31, 2006, by electronic and/or ordinary mail.

                                              s/LaShawn R. Saulsberry
                                              Case Manager